## APPEAL OF PAUL HERZOG.

Docket No. 1825. Submitted June 15, 1925. Decided October 30, 1925.

> *Held*, that a certain contract for payments of royalties inured to the benefit of a corporation of which the taxpayer was a stockholder and did not inure to his benefit, and that, under these circumstances, he could not be permitted to deduct an allowance for exhaustion of such contract.

*Henry Brach, C. P. A.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency for the years 1919 and 1920 in the amount of $6,959.41. The Commissioner in auditing the tax returns of the taxpayer for those years disallowed as a deduction claimed exhaustion of the value as of March 1, 1913, of a certain contract in which the taxpayer claimed to have an interest.

### FINDINGS OF FACT.

The taxpayer is an individual residing in New York City. For some time prior to March 1, 1913, and prior to the making of the contract here in question, the taxpayer was general manager of the properties and plant of the Braden Copper Co., a corporation operating copper properties in South America. In or about 1911 he ceased to be general manager but remained a director of the company and was a director at the time the said contract was entered into.

Prior to September, 1912, the taxpayer had come into contact with one Chiapponi, an engineer conducting experiments in the most

economical methods of extracting copper from ores.  In connection with these experiments, Chiapponi found that a certain process belonging to an English corporation known as the Minerals Separation, Ltd., would greatly increase the recovered copper from the ores of the Braden Copper Co.  The taxpayer, Chiapponi and others induced the Braden Copper Co. to enter into a contract with Minerals Separation, Ltd., for the erection of a trial plant and upon the successful testing of that plant for the application of the process to the entire property of the Braden Copper Co.  The compensation to be paid to the Minerals Separation, Ltd., was 6 pence per ton of ore treated.  Thereupon, under date of September 16, 1912, a contract was entered into between Minerals Separation, Ltd.; an English syndicate, and a corporation organized by the taxpayer and three associates, whereby 20 per cent of the royalties received under the Braden contract was to be paid to the two last-named parties.  The corporation organized by the taxpayer was known as the Chili-Bolivia Co.  The taxpayer owned a one-fourth interest therein.  Of this 20 per cent of the 6 pence per ton to be received by the two groups, the English group received 12½ per cent, and the American group, or the Chili-Bolivia Co. in which Herzog was interested, received 7½ per cent.  Approximately 3,400 tons of ore per day, 365 days per year, were being produced at the Braden property during this time and treated with the separation process in question.

The reasonably expected production under the process of the Braden Copper Co. for the life of the contract as of March 1, 1913, was 11,789,500 tons, and the expected royalties over the life of that contract as of that date were $26,893.77.  The fair value of such expected royalties as of March 1, 1913, was $13,580.33, and the annual exhaustion thereof was $1,429.51.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer introduced in evidence a copy of an original agreement between the Minerals Separation, Ltd., and the Chili-Bolivia Co., dated September 16, 1912, the contents of which in general have been outlined above.  The taxpayer also offered a copy of the contract between the Braden Copper Co. and Minerals Separation, Ltd., but an objection was made upon the ground that it was not the best evidence and it was rejected.  However, from the personal recollections of the taxpayer without dealing with the contents of the contract, the picture is sufficiently before the Board in his oral testimony.  To sustain a substantial value, the taxpayer testified

that the then known ore bodies of the Braden Copper Co. could have been utilized to produce 10,000 tons per day by the time this contract was concluded. The testimony is silent as to whether the company contemplated such action. The taxpayer also claimed that a computation of value based upon the expectation of an annuity under these circumstances is justified.

It is not insignificant that the computations of the taxpayer of these values exceed by very substantial amounts the actual total royalty received by the taxpayer in the taxable years under review. We are not convinced that the contract had any value beyond that represented by an anticipated royalty upon the treatment of 3,400 tons daily for 10 years from September 16, 1921.

The taxpayer alleged in his petition, and the Commissioner admitted in his answer, that the taxpayer and three others entered into a contract with the Minerals Separation, Ltd., under the terms of which they were to receive for a period of 10 years certain royalties. From the evidence submitted by the taxpayer it appears, however, that the contract in question was not between the taxpayer and his associates and Minerals Separation, Ltd., but was between Minerals Separation, Ltd., and the Chili-Bolivia Co. in which the taxpayer and his associates were stockholders. Upon the evidence before the Board, notwithstanding the admissions by the Commissioner, we find that the taxpayer had no interest in the contract subject to exhaustion. While we would not permit the Commissioner to introduce evidence to contradict the admissions of his answer, the evidence here in question came from the taxpayer as a necessary part of his case, and we must affirm the determination of the Commissioner, not upon the ground originally taken by him that the taxpayer's contract was without value but upon the ground that the taxpayer had no contract.